**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

FIVET GROUP AG
        *Plaintiff*,

  v.

LIONCAP GLOBAL MANAGEMENT LLC
and MARLON RANDELL MULLER
        *Defendants.*

No. 1:24-cv-1407-CMH-WEF

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff FiveT Group AG's ("FiveT") Motion for Default Judgment as to Defendants LionCap Global Management LLC ("LionCap") and Marlon Randell Muller ("the Motion"). (Dkt. 13). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge has reviewed the Motion and relevant pleadings and is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. For the reasons set forth below, the undersigned recommends **GRANTING** Plaintiff's Motion for Default Judgment (Dkt. 13) as to Counts I (Muller only) and II (LionCap only), **DENYING** the Motion as to Counts II (Muller only) and III (Muller and LionCap), and **AWARDING** Plaintiff (1) $696,402.53 plus prejudgment interest as to Count I (for which Muller alone is liable); (2) $500,000 plus prejudgment interest as to Count II (for which LionCap alone is liable); (3) reasonable attorneys' fees and costs as to Count I (for which Muller alone is liable); and (4) post-judgment interest on the Court's entire award of damages, prejudgment interest, and fees and costs.

## I.    PROCEDURAL HISTORY

Plaintiff FiveT initiated this civil action against defendants LionCap and Muller on October 12, 2024 (Dkt. 1) ("Complaint").  The Complaint asserted causes of action for breach of contract against Muller for failure to repay a promissory note and breach of contract and fraud against Muller and LionCap arising out of their failure to execute a stock purchase agreement. (*See generally id*.).  For relief, FiveT sought an award of compensatory damages, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs, all to be borne by Defendants joint and severally.[1] (*Id*. at 7, 8).  The Clerk of Court issued summonses to both defendants on August 13, 2024. (Dkt. 6).  Executed service returns indicate that Muller was personally served with process in Los Angeles, California on August 22, 2024, and that LionCap was served via its registered agent Paracorp Inc. on August 13, 2024. (Dkts. 7, 8).

Pursuant to Federal Rule of Civil Procedure 12(a)(1)(i)'s requirement that, absent waiver of service, a defendant must serve a responsive pleading within 21 days after being served with a summons and complaint, Muller had until September 12, 2024 to respond to the Complaint, and LionCap had until September 3, 2024 to respond to the Complaint.  Neither defendant appeared in this matter in any manner before September 25, 2024, when Plaintiff requested that the Clerk enter default against Defendants for failure to plead or otherwise defend within the meaning of Rule 55(a). (Dkt. 9).  The Clerk of Court entered default as to both Defendants on September 26, 2024. (Dkt. 12).

Thereafter, Plaintiff moved for default judgment pursuant to Rule 55(b) against both defendants on November 1, 2024. (Dkt. 13).  The undersigned held a hearing on Plaintiff's Motion on December 20, 2024, at which Plaintiff appeared through counsel, but no one for Defendants

---

[1]    Plaintiff's request for relief on the current Motion differs slightly from the Complaint but does not exceed what is prayed for in the Complaint.

appeared. (Dkt. 23).  The undersigned took Plaintiff's Motion under advisement to issue this report and recommendation and offered Plaintiff the opportunity to file supplemental briefing within thirty days on the issues of piercing the corporate veil and reasonable attorneys' fees. (Dkt. 19).  Plaintiff filed a supplemental memorandum and declaration in support of the reasonableness of its requested attorneys' fees on January 21, 2025. (Dkts. 20, 21).

The undersigned's review of the entire record as of the date of the filing of this report and recommendation confirms that Defendants have never responded to the Complaint or otherwise participated in this civil action in any form.  Further, Plaintiff's Motion is now ripe for disposition.

## II.    LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure calls for a two-step process for obtaining a default judgment.  First, the plaintiff must request entry of default by the Clerk of Court against the defendant for "fail[ure] to plead or otherwise defend," by which liability is admitted. *See* FED. R. CIV. P. 55(a); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F. 3d 114, 128 (2d Cir. 2011). Next, the plaintiff must apply to the Court for the actual default judgment, which "converts the defendant's admission of liability into a final judgment that terminates the litigation." *Mickalis Pawn Shop, LLC*, 645 F. 3d at 128; FED. R. CIV. P. 55(b)(2).

"A court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right." *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d, 731 (E.D. Va. 2014).  On a motion for default judgment, the defendant in default is deemed to have admitted the complaint's non-conclusory "well-pleaded allegations of fact" and the Court is to determine whether those facts state a valid facial claim for relief as a matter of law. *GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003);

*Grabert*, 8 F. Supp. 3d at 736, 739 (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face); *Burbach Broad Co. of Delaware v. Elkins Radio Corp.*, 278 F. 3d 401, 406 (4th Cir. 2002) (court will "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor"). Damages alleged in the Complaint, however, are not deemed admitted by a defaulting defendant: rather, the Court "must make an independent determination regarding damages," including by reliance on affidavits or documentary evidence in the record. *See Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020); FED. R. CIV. P. 8(b)(6).

## III.    JURISDICTION AND VENUE

In this case, the Court must have both subject matter jurisdiction and personal jurisdiction over Defendants, and venue in this judicial district must be proper before the Court can render a default judgment. The undersigned finds that these requirements have been satisfied.

### A.    Subject Matter Jurisdiction

The undersigned finds that the Court has proper diversity subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The Complaint asserts Virginia common law causes of action with the amount in controversy attributable to Muller of at least $696,402.53 (the value of the unpaid promissory note at maturity) and LionCap of at least $500,000 (the value of the stock purchase agreement), amounts which are both in excess of the $75,000 statutory minimum. 28 U.S.C. § 1332(a). There is also complete diversity of citizenship between the parties, as Plaintiff FiveT is a citizen of Switzerland and Defendants Muller and LionCap are citizens of California.[2]

---

[2]    The citizenship of a limited liability company (LLC) like LionCap is determined by the citizenship of all of its members. *Central West Virginia Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F. 3d 101, 103 (4th Cir. 2011). Plaintiff submits, and the undersigned finds, that Muller (a citizen of California) is the member of LionCap and accordingly, LionCap is considered a citizen of California for purposes of evaluating diversity jurisdiction.

(Complaint ¶ 5, 7–11).

> B. Personal Jurisdiction

The Court must also have personal jurisdiction over LionCap and Muller.  The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party.  *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co*., 682 F.3d 292, 301 (4th Cir. 2012).  Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  The inquiry to find personal jurisdiction requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state.  *Tire Eng'g & Distrib*., 682 F.3d at 301 (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc*., 293 F.3d 707, 711 (4th Cir. 2002)).  Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (internal quotation marks and citation omitted).  Virginia's long arm statute, Va. Code Ann. 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits, thus requiring only one inquiry.  *Hilton Franchise Holding, LLC v. HC Southfield LLC*, No. 1:19-CV-610 (LO/TCB), 2021 WL 5194109, at *2 (E.D. Va. Mar. 24, 2021), *report and recommendation adopted*, No. 1:19-CV-00610, 2021 WL 5192362 (E.D. Va. Apr. 12, 2021).

LionCap is an LLC organized under the laws of the Commonwealth of Virginia, with a principal office in McLean, Virginia.  LionCap also entered into the stock purchase agreement that

provided for the application of Virginia law and the jurisdiction of the courts of the Commonwealth of Virginia. "A valid forum selection clause allows for personal jurisdiction in the chosen forum under the principles of 'contractual consent or wavier.'" *W.L. Gore & Associates, Inc. v. Medtronic, Inc.*, 778 F. Supp. 2d 667, 671 (E.D. Va. 2011) (collecting cases). Federal courts will generally enforce a forum selection clause if it is not unreasonable.[3] *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F. 3d 643, 650–52 (4th Cir. 2010). The undersigned finds the forum selection clause, which was accepted by LionCap, to be mandatory and wholly reasonable and enforceable. LionCap has thus consented to the personal jurisdiction of this Court regarding claims involving the stock purchase agreement.[4] (*See* Complaint ¶¶ 3, 9, 10; Dkt. 1-3).

For his part, Muller transacted the relevant business regarding the promissory note and stock purchase agreement while in Virginia and while a Virginia resident. Muller also secured the promissory note against the full value of his Great Falls, Virginia home. Thus, this Court's exercise of personal jurisdiction over Muller is appropriate as a matter of due process and under the Virginia the long-arm statute. (Dkt. 15 at 4; Complaint ¶ 11; Dkt. 1-1).

For these reasons, the undersigned finds that the Court has personal jurisdiction over both Defendants.

---

[3]     A forum selection clause may be found unreasonable if (1) its formation was induced by fraud or over-reaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) its enforcement would contravene a strong public policy of the forum state. *Albemarle Corp.*, 628 F. 3d at 651 (cleaned up). The undersigned finds that none of these factors apply as to suggest the forum selection clause here is unreasonable.

[4]     Because LionCap appears to only be a citizen of California, the undersigned does not agree with Plaintiff's contention that the Court may exercise general jurisdiction over LionCap because "Defendant LionCap is a citizen of the Commonwealth of Virginia." (Dkt. 15 at 3). But the Court does find that LionCap's affiliations with the Commonwealth are so "continuous and systematic" as to make it "at home" in Virginia such that general jurisdiction may be had anyway. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

C.  Service of Process

Service of process on Defendants was also proper. "Service of Process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that person has not been served." *Pardazi v. Cullman Medical Center*, 896 F. 2d 1313, 1318 (11th Cir. 1990); *In re Outboard Marine Corp.*, 369 B.R. 353, 358 (Bankr. N.D. Ill. 2007) (collecting cases) ("As a result, a default judgment obtained after improper service is void."). Here, the executed service returns filed August 26, 2024 (Dkt. 7) and September 4, 2024 (Dkt. 8) indicate that Muller was personally served at the intersection of Tampa Avenue and Ventura Boulevard in Los Angeles, California on August 22, 2024 (Dkt. 7), and that LionCap was served on its registered agent Paracorp Inc. on August 13, 2024 (Dkt. 8). Service was thus proper pursuant to Rules 4(e)(2)(A) and 4(h)(1)(B) respectively.

D.  Venue

The undersigned finds that venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated," in this district. Specifically, LionCap is an LLC organized under the laws of the Commonwealth of Virginia, with a principal place of business in McLean, Virginia and the promissory note was secured against Muller's home in Great Falls, Virginia, all of which are in the Eastern District of Virginia. (Complaint ¶¶ 6, 27).

## IV.    FACTS ALLEGED IN THE COMPLAINT AND DEEMED ADMITTED

Here, the Clerk of Court properly entered default as to each defendant based on their failure to plead or defend this action within the meaning of Rule 55. (Dkt. 12).  The following facts alleged

in the Complaint are found to be well-plead and are now deemed admitted by Defendants.[5]

Plaintiff FiveT is a privately held investment and holding company based in Switzerland. (Complaint ¶ 2). Defendant LionCap is a Virginia LLC formed in 2015 that is owned by its member Defendant Marlon Muller. (*Id.* ¶¶ 3, 4, 12). LionCap markets itself as a financial services firm with operations in Asia, Europe, and the Middle East. (*Id.* ¶ 3). Since 2002, Muller and LionCap have been named as defendants in almost 50 civil litigation matters filed in California, Florida, Iowa, Maryland, New Jersey, New York and Virginia. (*Id.* ¶ 20). These matters predominantly involve claims that Muller failed to satisfy various financial obligations and contracts, including allegations that Muller: did not fulfill stock purchase orders after receiving the agreed funds; duped investors into fraudulent investments in non-existent companies; or withheld housing rent and retained possession of the property after the leases had expired without paying additional rent. (*Id.*). In *Securities Exchange Commission v. Marlon Muller*, Case No. 21-cv-06048, the United States District Court for the Southern District of New York permanently barred Muller from engaging in penny stock offerings, among other related restrictions, on October 22, 2021. (*Id.* ¶ 21). In that action, the Securities and Exchange Commission ("SEC") alleged that, beginning in June 2015, Muller engaged in a pattern of coordinated trading intended to artificially raise and sustain a stock's share price and to generate liquidity. (*Id.* ¶ 22). Muller consented to judgment against him. (*Id.*).

On June 22, 2017, FiveT and Muller[6] entered into a promissory note under which FiveT provided CHF 500,000 to Muller, which was transferred to Muller on June 23, 2017. (*Id.* ¶¶ 24,

---

[5]    Certain allegations not recounted in this section were not well-pleaded and the undersigned did not find them to be admitted. These allegations will be discussed below as necessary to the undersigned's analysis of Plaintiff's claims.

[6]    Muller and Vicky Ly Houng Tay were listed as "the Borrower" on the note and each signed the note. (Dkt. 1-1).

25; Dkt. 1-1).  The interest on the promissory note was 50 basis points per month and the note was secured by Muller's home in Great Falls, Virginia. (Complaint ¶¶ 26, 27; Dkt. 1-1).  On August 30, 2020, the promissory note was amended so that the maturity date was set at January 31, 2021.[7] (Complaint ¶ 28; Dkt. 1-2).  Muller failed to repay the promissory note after the passing of the maturity date of January 31, 2021. (Complaint ¶ 29).  The full balance due to FiveT at the maturity date was $696.402.53 (*Id*. ¶ 30).

Separately,[8] on March 15, 2021, FiveT entered into a Stock Purchase Agreement ("SPA") with LionCap for the purchase of 41,729,311 shares of common stock of BRRN, a Nevada corporation, in exchange for $500,000. (Complaint ¶ 32; Dkt. 1-3).  The SPA provides that the agreement is governed by and construed in accordance with the laws of the Commonwealth of Virginia. (Complaint ¶ 33; Dkt. 1-3).  On March 16, 2021, FiveT paid LionCap the $500,000 promised under the SPA. (Complaint ¶ 34).  However, LionCap failed to provide the contracted-for BRRN stock or return the monies paid, and around May 2021, Muller ceased responding to any communications from FiveT, including regarding the BRRN stock. (*Id*. ¶¶ 35–37).

In the month before the SPA was entered into, in February 2021, Muller and his wife Jackie Muller ("the Mullers"), promoted themselves as wealthy individuals and as members of the "preppy elite." (*Id*. ¶ 44).  In a profile in *Middleburg Life*, the Mullers detailed their lavish lifestyle,

---

[7]    The original note stated that "[t]he term of the principal loan is for the period of Thirty days (1) month from the date of execution of this Promissory Note. Upon expiration of the term, the Borrower must fully repay the outstanding Principal Loan together with interest as herein provided (if any) to the Lender unless mutual agreement to the contrary. All outstanding principal on the final payment date will be repaid together with the amount of the final payment of interest and all other sums then due and payable to us[.]"

The Amendment to the promissory note was signed by Muller and FiveT board member Johannes Minho Roth and recognized that "[t]he interest amount payable as of August 30, 2020 is USD 88,109.60."

[8]    At the hearing on the Motion for Default Judgment, Plaintiff's counsel confirmed that the promissory note and stock purchase agreement breaches are separate from and unrelated to each other.

including first meeting at Paris Fashion Week; splitting time between Hong Kong, New York City and Washington, DC, while "working on investments;" and taking polo lessons with Muller's son. (*Id*. ¶ 45).   The Mullers continue to promote themselves on social media as living a wealthy and luxurious lifestyle while refusing to fulfill their financial obligations. (*Id*. ¶ 46).   Starting in February 2021, the Mullers launched their lifestyle-brand, Recreation Habits, which centers on the "preppy" fashion trends and associated lifestyle, such as polo and horseback riding, golf, tennis, and boating. (*Id*.).   The brand incorporates the Mullers into its marketing and portrays them as affluent individuals. (*Id*.).   While refusing to respond to FiveT's requests, the Mullers continued to be active on social media, promoting Recreation Habits and their luxurious lifestyle. (*Id*. ¶ 47). At no time during his communications with FiveT did Muller communicate or reveal to FiveT that he would be unable to or had no intention of providing the contracted-for BRRN stock, including after receiving payment, nor did Muller communicate or reveal that he had a history of failing to satisfy various financial obligations or contracts. (*Id*. ¶¶ 48–50).

## V.     SUFFICIENCY OF THE CLAIMS UNDER RULE 12(B)(6)

In order to grant default judgment, the well-plead facts must properly state a claim under Rule 12(b)(6).  Here, Plaintiff seeks default judgment for breach of the promissory note (Count 1), breach of the Stock Purchase Agreement (Count 2), and fraud (Count 3).

### A.  Count I (Breach of Contract – Promissory Note) States a Claim Against Muller.

Count I of the Complaint asserts a claim against Muller for common law breach of contract for failure to repay the promissory note. Complaint ¶¶ 23–30.  Plaintiff states that it and Muller entered into a promissory note on June 22, 2017, whereby Plaintiff provided CHF 500,000 to Muller at an interest rate of 50 basis points per month that Muller failed to repay after the passing of the maturity date of January 31, 2021 (as amended).

"Under Virginia common law, breach of a promissory note is encompassed under a breach of contract claim." *Premier Bank, Inc. v. Technology Resources, Inc.*, 2013 WL 6834380, at *5 (E.D. Va. Dec. 23, 2013) (default judgment). To state a claim, Plaintiff must successfully plead the elements of breach of contract and further show that the statutory requirements for the enforcement of a promissory note are fulfilled. *See id.*

Breach of contract requires a plaintiff to show (1) that the defendant had a legally enforceable obligation to the plaintiff; and (2) the defendant's violation or breach of that obligation; and (3) injury or damage caused by the breach of that obligation. *Filak v. George*, 267 Va. 612, 619 (2004).

Virginia Code Section 8.3A-104 defines a "negotiable instrument" (of which a promissory note is one) as an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order that (1) is payable to the bearer or to order at the time it is issued or first comes into possession of a holder; (2) payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money. Va. Code Ann. § 8.3A-104(a).  For a plaintiff to bring a civil action for enforcement of a promissory note, the note must be signed by the charged party or his agent. Va. Code Ann. § 8.01-27.  Signatures on negotiable instruments are presumed valid unless denied in the pleadings. Va. Code. Ann. § 8.3A-308(a).

Here, Plaintiff has alleged sufficient facts to permit a judgment against Muller[9] for breach of contract with respect to the promissory note as amended. The promissory note constitutes a

---

[9]  Although Defendants seek to hold Muller personally liable for the debts of LionCap (Complaint ¶ 15), Defendants bring Count I against Muller only (Complaint at 4), and Defendants do not clearly suggest (apart from stating in the Complaint but not the Motion for Default Judgment that Defendants should bear all damages jointly and severally,

valid negotiable interest under Virginia law because it (1) is payable to order (of Plaintiff) at the time it was issued; (2) payable at a definite time (first "thirty days (1) month from the date of execution" and as amended January 31, 2021); and (3) obligates Muller to do nothing but pay Plaintiff CHF 500,000 plus interest at the rate of 50 basis points per month. Both the original note and the subsequent amendment are signed by Muller, the party to be charged. Thus, Muller had a legally enforceable obligation to repay the note to Plaintiff. Plainly, Muller breached that obligation by failing to repay, at any time up to the current day, any amount on the promissory note. This failure caused Defendant a substantial loss, which will be discussed further below. Accordingly, and because Muller waived presentment, demand for payment, protest, notice of protest, and notice of dishonor of the note (Dkt. 1-1), Muller is now liable to Plaintiff for all amounts due on the promissory note.

B. Count II (Breach of Contract – Stock Purchase Agreement) States a Claim Against LionCap, but not Muller.

Count II of the Complaint asserts a claim against LionCap and Muller (under a corporate veil-piercing theory) for common law breach of contract for failure to fulfill the March 2021 SPA. (Complaint ¶¶ 31–39). Plaintiff asserts that it and LionCap entered into a SPA for the purchase of 41,729,311 shares of common stock of BRRN, a Nevada corporation, in exchange for $500,000. (*Id*. ¶ 32). Plaintiff paid LionCap the $500,000 promised under the SPA, but LionCap failed to provide the BRRN stock or return the money paid to it. (*Id*. ¶¶ 34, 35). Plaintiff further contends that the Court should pierce the corporate veil and hold Muller personally liable on Count II because Muller "used LionCap to defraud FiveT, gain an unfair advantage, and evade financial obligations to FiveT." (*Id*. ¶ 38).

---

Complaint at 7, 8) nor does the undersigned find, that LionCap should be liable as to Count I, as there are absolutely no allegations of LionCap's involvement in the promissory note.

Here, Plaintiff has alleged sufficient facts to permit a judgment against LionCap for breach of the SPA, but on this record, the undersigned does not find that Muller may be held personally liable for the same.

Plaintiff has clearly established LionCap's breach of the SPA. The SPA is a signed, binding, enforceable contract under which LionCap was to deliver 41,729,311 shares of common stock of BRRN in exchange for payment of $500,000 by Plaintiff. Plaintiff in fact paid LionCap $500,000, but LionCap never provided the stock or returned the money paid by Plaintiff, which constitutes breach,[10] and this breach substantially damaged Plaintiff. LionCap is thus liable for breach of SPA under Count II.

Plaintiff cannot show, however, that Muller (the Member of LionCap) is personally liable for breach of the SPA. In Virginia, a member, manager, organizer, or agent of an LLC is generally not personally responsible for the liabilities of the LLC to third parties. Va. Code § 13.1-1019; *A.G. Dillard, Inc v. Stonehaus Construction, LLC*, 2016 WL 3213630, at *2 (VA. June 2, 2016) (collecting cases). But under some circumstances, an LLC member may incur personal liability via a corporate "veil piercing" theory. Virginia (like Delaware) applies the same test for veil piercing to both LLCs and corporations. *See Finney v. Clark Realty Capital, LLC,* 2021 WL 5195216, at *1 & n.2 (E.D. Va. July 20, 2021). "This test centers on the existence of (1) fraud and injustice, and (2) unfairness stemming from an LLC's operation as an instrumentality or alter ego of its owner." *Id.* at *1 & n.3 (collecting cases); *see Cheatle v. Rudd's Swimming Pool Supply Co., Inc.*, 360 S.E. 2d 828, 831 (Va. 1987) ("the plaintiff must show that the corporate entity was the

---

[10]    Section 1.4 of the SPA contemplates that the $500,000 purchase price of the stock was to be delivered to LionCap on or before the closing date of March 15, 2021, although Plaintiff actually made this payment on March 16, 2021. (Dkt. 1-3). Nevertheless, the contract is still effective against LionCap, because nothing indicates that the parties intended for time to be of the essence. *See, e.g.*, *Dziarnowski v. Dziarnowski*, 418 S.E. 2d 724, 761 (VA. Ct. App. 1992).

alter ego, alias, stooge, or dummy of the individuals sought to be charged personally and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime."); *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (recognizing both "alter ego" and "fraud and injustice" use required for piercing). "The standards for veil piercing are very stringent, and piercing is an extraordinary measure that is permitted only in the most egregious circumstances." *C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E. 2d 806, 811 (Va. 2003); *Id.* (litigant must show that the entity sought to be pierced has been "controlled or used by the debtor to evade a personal obligation, to perpetrate a fraud or crime, to commit an injustice, or to gain an unfair advantage").

Plaintiff cannot establish that LionCap is an "alter ego" of Muller, nor can it show that LionCap was used to perpetrate "fraud and injustice."  As to the first prong, Plaintiff has alleged, for example, that Muller "treated the funds, accounts, and assets of LionCap as his own personal piggy bank, using them to pay for and fund his personal expenses." (Complaint. ¶ 19).  But Plaintiff simply does not allege any facts to engage with the intensive analysis of considerations, such as LLC capitalization, solvency, business formalities, dividend payments, financial records, and fund siphoning, required to determine whether LionCap is an "alter ego" of Muller. *Finney*, 2021 WL 5195216, at *2 (citing *City of Virginia Beach v. Nala Corp.*, 2000 WL 33340789, at *19 (Va. Cir. Ct. Sept. 29, 2000)).

Regarding the second prong, Plaintiff's object must be to show not merely that the fraud and injustice caused by LionCap "arise[s] only from the claim asserted," but also that the LLC was "structured with the purpose to commit fraud or do wrong, or violate the law or other legal duty, or do an unjust act in contravention of the plaintiffs rights." *Finney*, 2021 WL 5195216, at *2 (collecting cases) (cleaned up). However, the Complaint pays only lip service to this requirement,

14

inadequately claiming that Muller "used LionCap to defraud FiveT and evade financial obligations to FiveT" and asserting without real factual support[11] that Muller "has used and continued to use LionCap's corporate form to engage in a pattern and practice of cheating and defrauding others" and "evading financial obligations." (Complaint ¶¶ 16–18).

At bottom, Plaintiff, on the current record, has not established the factual predicate that would allow the Court to find this is the exceptional case necessitating veil piercing to reach Muller for breach of the SPA.[12] This is so even as the undersigned raised these concerns at the hearing on Plaintiff's Motion for Default Judgment and permitted Plaintiff to submit supplemental briefing on veil piercing as well as the reasonableness of attorneys' fees—Plaintiff ultimately submitted a memorandum regarding only attorneys' fees.

For these reasons, the undersigned finds that Count II states a claim against LionCap for breach of the SPA and accordingly default judgment should be entered against LionCap, but Count II fails to sufficiently allege facts to pierce the corporate veil and therefore Count II should be dismissed as to Muller.

---

[11]    The Complaint asserts that since 2002, Muller and LionCap have been named in nearly 50 civil suits filed in states across the US which "predominantly involve claims that Mr. Muller failed to satisfy various financial obligations and contracts, including allegations that Mr. Muller: did not fulfill stock purchase orders after receiving the agreed funds; duped investors into fraudulent investments in non-existent companies; or withheld housing rent and stayed over expiring residential leases without paying additional rent." (Complaint ¶ 20). The Complaint also observes that Muller has been permanently barred from engaging in penny stock offerings in an SEC enforcement action brought in the Southern District of New York. (*Id.* ¶ 21).

The undersigned accepts these allegations as tending to show that Muller has personally committed many wrongs but finds that they do not establish that Muller specifically used LionCap to perpetrate illegality. Notably, as to the 50 civil suits, LionCap was organized in 2015 (such that it could not have been sued prior to its creation) and the Complaint's summarization of these suits make clear that the claims pertain to Muller himself. The same can be said of Muller's penny stock disbarment, which does not clearly involve LionCap to any degree.

[12]    To the extent that Plaintiff's assertion that Muller / LionCap engaged in promissory fraud with respect to the SPA is relevant to Count II, the undersigned does not find that Plaintiffs have adequately pleaded promissory fraud in the first place, as discussed below. (*See* Dkt. 15 at 6).

C. <u>Count III (Promissory Fraud) Fails to State a Claim Against Any Defendant.</u>

Count III of the Complaint asserts a claim against LionCap and Muller (under a corporate veil-piercing theory)[13] for common law promissory fraud arising out of Defendants' agreement to and failure to fulfill the March 2021 SPA. (Complaint ¶¶ 40–53). Plaintiff argues that Defendants entered into the SPA with no intention of actually performing, claiming specifically that Muller knew but never disclosed that at the time of contracting that he would not provide the promised stock and that Muller misrepresented his wealth and ability to provide the promised stock. (*Id.* ¶¶ 42, 43). In support, Plaintiff points to Muller and his wife "promot[ing] themselves as wealthy individuals and as members of the 'preppy elite'" in online media in the month before the SPA was entered, as well as their continued public promotion of their lifestyle fashion brand "Recreation Habits" in the time since. (*Id.* ¶¶ 44–46).

"Because fraud must involve a misrepresentation of a present or a pre-existing fact, fraud ordinarily cannot be predicated on unfulfilled promises or statements regarding future events." *Gelber v. Glock*, 293 Va. 497, 530 (2017) (quoting *SuperValu, Inc. v. Johnson*, 276 Va. 356, 367, (2008)). "Were the general rule otherwise, every breach of contract could be made the basis of an action in tort for fraud." *Id.* (quoting Lloyd *v. Smith*, 150 Va. 132, 145 (1928)). "Nevertheless, if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Id.* (citing *SuperValu, Inc.*, 276 Va. at 368; *Colonial Ford Truck Sales, Inc. v. Schneider*, 228 Va. 671, 677 ("[T]he promisor's intention—his state of mind—is a matter of fact" and a misrepresentation about that intention "if made to induce the promisee to act to his detriment, is actionable as an actual fraud.")).

---

[13]    Plaintiff does not specifically articulate how Muller can be personally liable on Count III but the undersigned presumes that Plaintiff is again attempting to pierce the corporate veil as there is no plausible alternative theory.

Here, Count III does not properly state a claim against either Defendant for fraud. As with Count II, Plaintiffs have not sufficiently alleged facts to support veil piercing to reach Muller on Count III. Since Plaintiff cannot pierce the corporate veil, Muller and his wife's personal portrayals of themselves as wealthy and promotions of their Recreation Habits brand have no clear bearing on LionCap's ability to deliver the promised BRRN stock. Even if these acts were relevant to LionCap, they are hardly probative of LionCap's intentions at the time of contracting.[14] Accordingly, the undersigned recommends that Plaintiffs' Motion for Default Judgment be denied as to Count III, and Count III be dismissed in its entirety.[15]

---

[14] It is noteworthy that the Complaint itself does not set forth any connection between LionCap's intent and Muller's public portrayal of himself as wealthy. Plaintiff simply lays out the Recreation Habits promotion and *Middleburg Life* profile alongside the allegations that Muller "knew before and at the time the SPA was entered into that he would not provide the promised stock" and that "Muller misrepresented his wealth and ability to provide the promised BRRN" without further meaningful explanation. The undersigned further finds that merely claiming that Muller "misrepresented his wealth and ability to provide the promised BRRN" or failed to state he had "no intention of providing the contracted for stocks" (Complaint ¶¶ 43, 50) satisfies the heightened fraud pleading requirements (i.e., "who, what, when, why, how") of Federal Rule of Civil Procedure 9.

[15] The undersigned also observes certain allegations within the record, representations of Plaintiff's counsel made at the hearing on the Motion for Default Judgment, and publicly available facts reflect an unusual commercial relationship between the parties and caution against an entry of default on Count III.

First, although the original 2017 promissory note provided for a maturity date thirty days after the execution of the note, Plaintiff apparently took no efforts to pursue the unpaid debt at least until amendment of the note in 2020, at which time the parties recognized the accrued interest on the note and set a new maturity date in 2021. Further, although the promissory note establishes an interest in Muller's multi-million dollar Great Falls home, that interest was seemingly never recorded, nor did Plaintiff ever seek to enforce its interest in the property. When asked why this was the case at the hearing on the Motion for Default Judgment, Plaintiff's counsel stated that he did not know and that the relevant events transpired before counsel began representing Plaintiff.

Second, it is extremely curious that FiveT and LionCap entered into the Stock Purchase Agreement less than two months after Muller had failed to repay the promissory note after the passing of the amended maturity date. When asked by the undersigned at the hearing on the Motion for Default Judgment why the SPA deal made any sense in light of Muller's past failure to repay Five T, Plaintiff's counsel stated that it did not much make sense to him either, but that his client found Muller "very convincing" and sought to stick with him in terms of "potential opportunity." Plaintiff's counsel also submitted that he did not know much else about the case apart from having been referred the matter from his firm's international team, which had a long-term relationship with the client.

Third, it is also worth observing that filings made by BORN, Inc. ("BRRN") with the Securities and Exchange Commission indicate that (1) on September 23, 2020, Plaintiff became the controlling shareholder of BORN (as a result of a transaction with a party uninvolved in this action), and (2) on the same date, Wieland Kruder, who signed the SPA on behalf of Plaintiff, became the President, CEO, CFO, Treasury, Secretary, and Chairman of the Board of Directors of BORN. *See, e.g.*, https://www.sec.gov/ix?doc=/Archives/edgar/data/0001397795/000121390025031846/ea0231324-10k_byrninc.htm.

## VI.    REQUESTED RELIEF

On its current Motion for Default Judgment, Plaintiff requests:

- An award of $696,402.53 pursuant to Count I, to be borne by Muller, which includes the principal amount on the loan with interest accrued until the maturity date (Dkt. 15 at 6, 11);

- An award of $500,000 pursuant to Count II, to be borne by Muller and LionCap jointly and severally, attributable to the amounts owed under the SPA (*Id.*);

- An award of $350,000 pursuant to Count III, to be borne by Muller and LionCap jointly and severally, attributable to punitive damages (*Id.* at 7, 8, 12);

- An award of attorneys' fees and costs, as permitted by the promissory note underlying Count I and Virginia law providing for attorneys' fees for fraud claims like Count III (*Id.* at 8, 9, 12);

- An award of prejudgment interest on any awarded compensatory damages, including in addition to any interest already due on the promissory note (*Id.* at 10–12); and

- An award of postjudgment interest on the entire amount awarded by the Court, as required by federal law (*Id.* at 11, 12).

Aside from the requested punitive damages, which are plainly unavailable because Count III fails to state a claim for relief against any Defendant, the undersigned will address these requests in turn.

---

Such filings also indicate that at least for several years, BORN has been a dormant company, essentially has no business, and in very vague terms intends to explore (but has had no discussions regarding) a merger with some other business entity.

A. <u>Count I – Compensatory Damages</u>

Count I states a claim for breach of the promissory note by Muller. It is Plaintiff's burden to "establish the element of damages with reasonable certainty"—"Damages that are contingent, speculative, and uncertain are not recoverable …" *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009). Here, the undersigned finds that Plaintiff has sufficiently established compensatory damages in the amount of the principal on the promissory note along with interest accrued up until the amended maturity date of January 31, 2021. At the note's stated interest rate of 50 basis points per month, this amounts to a total of CHF 622,697, or $696,402.53. Accordingly, the undersigned finds that an award of $696,402.53, for which Muller alone is liable, is appropriate and commensurate with the actual loss sustained.

B. <u>Count II – Compensatory Damages</u>

Count II states a claim for breach of the SPA by LionCap, but not Muller. The undersigned finds that Plaintiff has sufficiently established compensatory damages in the amount of $500,000, based on the purchase price of the undelivered shares. Accordingly, the undersigned finds that an award of $500,000, for which LionCap alone is liable, is appropriate and commensurate with the actual loss sustained.

C. <u>Prejudgment and Post-judgment Interest</u>

Virginia law[16] permits this Court to award prejudgment interest, in its sound discretion, by weighing the "equities in a particular case to determine whether an award of prejudgment interest is appropriate." *See* Va. Code Ann. § 8.01-382; *Moore Bros. Co. v. Brown & Root, Inc*., 207 F. 3d 717, 727 (4th Cir. 2000); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co*., 515 U.S.

---

[16]    Virginia substantive law applies to the question of whether an award of pre-judgment interest is appropriate and such an award is discretionary. *ExxonMobil Oil Corp. v. Black Stone Petroleum Inc.*, 221 F. Supp. 3d 755, 766–68 (E.D. Va. 2016).

189, 196 (1995) (rationale underlying award of prejudgment interest "is to ensure that an injured party is fully compensated for its loss").  "[A] money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent annually, whichever is higher." Va. Code. Ann. § 6.2-302(B).  "If the judgment is based on a contract that does not fix an interest rate, the court shall apply the judgment rate of interest of six percent [6%] [annually] to calculate any award of prejudgment interest, pursuant to [Va. Code. Ann.] § 8.01-382[.]" *Id.*; *Allied Prop. & Casualty Ins. Co. v. Zenith Aviation Inc.*, 2019 WL 10960569, at *8 (E.D. Va. July 2, 2019).

Based on the totality of the circumstances, including the fact Muller never repaid the promissory note or made any efforts to do so, the undersigned finds that the equities favor an award of 6% simple prejudgment interest on the $696,402.53 award of compensatory damages to Plaintiff on Count I, accruing annually from the date of the note's maturity (January 31, 2021) to the date on which Plaintiff moved for default judgment (November 1, 2024).  This comes to an award of prejudgment interest in the amount of $156,833.67 on Count I, to be borne solely by Muller.

The undersigned also finds that based on the totality of circumstances, including the fact that LionCap never delivered the promised BRRN stock or refunded any of the $500,000 paid by Plaintiff under the SPA, the equities favor an award of 6% simple prejudgment interest on the $500,000 award of compensatory damages to Plaintiff on Count II, accruing annually from the date that Plaintiff paid for the promised stock (March 16, 2021) to the date on which Plaintiff moved for default judgment (November 1, 2024).  This comes to an award of prejudgment interest in the amount of $108,986.30 on Count II, to be borne solely by LionCap.

The undersigned further finds that an award of post-judgment interest on the Court's entire award, including compensatory damages, prejudgment interest, and attorneys' fees and costs

(discussed below), is warranted to ensure that Plaintiff receives the proper value of his award regardless of when he is able to collect it, and is in fact mandatory under federal law. 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *ExxonMobil Oil Corp.*, 221 F. Supp. 3d at 769 (citing *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F. 2d 1017, 1031 (4th Cir. 1993) ("federal law mandates the awarding of post judgment interest")); *PharMecia East, LLC v. Healthlink of Va. Shores, LLC*, 2020 WL 877983, at *3 (E.D. Va. Feb. 20, 2020) ("In the Fourth Circuit, post-judgment interest can be awarded on the entire amount the court awards."); *Barrella v. Village of Freeport*, 43 F. Supp. 3d 136, 195 (E.D.N.Y. 2014) ("Post-judgment interest is available for an award of attorneys' fees arising out of a judgment in the district court.").

D. <u>Attorneys' Fees and Costs</u>

Plaintiff last requests an award of attorneys' fees and costs for Plaintiff's counsel's work in this matter, as permitted by the promissory note underlying Count I and Virginia law providing for attorneys' fees for fraud claims alleged in Count III. Because Count III fails to state a claim upon which relief may be granted, fees and costs are only available by way of paragraph 5 of the promissory note underlying Count I. (Dkt. 1-1 ("In the event that it becomes necessary for the lender . . . to employ . . . counsel . . . to collect any amount due hereunder, then and in such an event, the Borrower is agreed to [] pay all the reasonable and necessary costs and expenses thereby incurred including legal fees.")); *Bolton v. McKinney*, 299 Va. 550, 554 (2021) (Virginia "American rule" precludes recovery of attorneys' fees "absent a specific contractual or statutory provision to the contrary").

Virginia law requires that a prevailing party entitled to an award of attorneys' fees has the "burden of proving that the requested fees are reasonable and that they were necessary." *Sidya v.*

*World Telecom Exchange Communications, LLC*, 301 Va. 31, 46 (2022) (collecting cases); *Id.* ("[A fee award] must be supported by sufficient evidence that tailors the fees to the specific successful claims triggering the right to such an award . . . the prevailing party is entitled to an award . . . only for those claims for which (a) there is a contractual or statutory basis for such an award and (b) the party has prevailed"). The Virginia Supreme Court has "identified seven factors for courts to consider in determining a reasonable attorneys' fee award":

> (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate.

*Sines v. Kessler*, 2023 WL 2388050, at *10 (W.D. Va. March 7, 2023) (cleaned up) (citing *Lambert v. Sea Oats Condo. Ass'n*, 798 S.E. 2d 117, 184 (Va. 2017)) (applying Virginia standard in lieu of Fourth Circuit standard on state law claims).[17]  A court is not required to "consider all these factors in every situation." *West Square, LLC v. Communication Techs., Inc.*, 274 Va. 425, 424 (2007) ("particular factors may have added or lessened significance depending on the circumstances of each case").  Ultimately, the amount of recoverable attorneys' fees rests within the sound discretion of the trial court. *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 180 (2006).

Here, Plaintiff seeks an award of $49,454 in attorneys' fees and $5,422.33 in costs, for a total of $54,876.33.[18] (Dkt. 15 at 10; Dkt. 13-1 at 4).  The undersigned finds that this request is

---

[17]    Although Plaintiff addressed the Fourth Circuit standard in its supplemental memorandum regarding reasonableness of the requested attorneys' fees (Dkt. 20), Virginia law, and not federal law, must be applied to determine the attorneys' fees to be awarded as Count I is a state common law claim which the Court is addressing based on diversity jurisdiction. *See, e.g.*, *Sines*, 2023 WL 2388050, at *10; *ACL Realty Corp v. .Com Properties, LLC*, 2007 WL 2900097, at *2 (W.D. Va. Oct. 3, 2007) (applying Virginia standard to request for fees on contract claim); *Airlines Reporting Corp.* 2012 WL 13019066, at *8 (same).

[18]    Plaintiff seeks to recover the following fees:

| TIMEKEEPER | POSITION | RATE | HOURS | TOTAL |
|---|---|---|---|---|
| John T. Lomas | Partner | $1,000.00 | 7.1 | $7,100.00 |

inflated for several reasons and will adjust the award accordingly following a lodestar analysis. *See Airlines Reporting Corp. v. Cartagena Travel and Tours, Inc*., 2012 WL 13019066, at *11 (E.D. Va. Aug. 3, 2012) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the . . . reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate . . [w]hen the documentation of hours is inadequate, the district court may reduce the award accordingly.").

First, the only fee-eligible claim is Count I, but Plaintiffs have not submitted itemized records that delineate the work performed by counsel by each count and/or task, providing only a table setting forth the hourly rate of each timekeeper, their total hours, and total dollar amounts claimed. (*See* Dkt. 13-2).  At the hearing on Plaintiff's Motion for Default Judgment, counsel requested (and was granted) leave to file a supplemental submission with such a breakdown, but Plaintiff's supplemental submission on the reasonableness of the requested fees ultimately did not provide such details, discussing only the reasonableness of counsels' hourly rates vis a vis the *Vienna Metro* and Fitzpatrick matrices. (Dkt. 20).  Plaintiffs' counsel also stated at the Motion hearing that most work was performed with respect to the case, so there was not much to carve out on each count. However, the undersigned cannot accept Plaintiffs' position on the current record, particularly where Virginia law does not permit "recovery of attorneys' fees attributable to intertwined advocacy." *CSX Transportation, Inc. v. Norfolk Southern Railway Co.*, 693 F. Supp. 3d 581, 588–89 (E.D. Va. 2023) (collecting cases) ("In Virginia, 'it simply does not matter if the

| Will O'Brien | Partner | $1,250.00 | 4.7 | $5,875.00 |
|---|---|---|---|---|
| Zack Lindsey | Associate | $645.00 | 47.7 | $30,766.50 |
| Devorah Hirsch | Paralegal | $325.00 | 0.4 | $130.00 |
| Stephanie Keating | Paralegal | $275.00 | 20.3 | $5,582.5 |
| | | | | $49,454.00 |

(Dkt. 13-2).

party's other claims, successful or unsuccessful, "were intimately intertwined [with] and depended on a common factual basis as fee-eligible claims; time spent on a fee-eligible claim must be unwoven from fee-ineligible claims to be recoverable."). Accordingly, and because the bulk of Plaintiff's efforts in this case up to November 1, 2024 (the date of the filing of Plaintiff's Motion for Default Judgment) appear to pertain to Counts II and III, the undersigned finds that a 60% reduction to the hours claimed by each timekeeper is appropriate to ensure that this Court's award of attorneys' fees is commensurate with the work fairly attributable to Count I.

Second, the amount of time expended by Plaintiffs' attorneys and staff on this case is disproportionate to that which would typically be devoted to a case of this nature. The only substantive filings made by Plaintiff in this case are the Complaint (Dkt. 1) and Motion for Default Judgment (Dkt. 13, 15), which upon the undersigned's review, are both short and uncomplicated pleadings. The claims are predicated upon simple facts and equally straightforward theories of liability and Plaintiffs' Motion for Default Judgment does little to articulate that which has not already been said in the Complaint. Further, the bulk of Plaintiffs' written advocacy appears to have been devoted to Count II and III's assertions of veil-piercing and promissory note fraud, but these efforts were ultimately unsuccessful. This is all to say that the commitment of a total of 59.5 hours of attorney time and 20.7 hours of paralegal time is plainly excessive in light of the uncomplicated needs of the case.[19] Accordingly, the undersigned finds that an additional 10%

---

[19] The undersigned also finds that the claimed time after applying the 60% reduction to reflect recovery for Count I only (resulting in 23.8 hours of attorney time and 8.28 hours of paralegal time) is still disproportionate to the needs of that claim.

Plaintiffs' failure to provide itemized time records, even after being invited to submit such at the hearing on the Motion for Default Judgment, frustrates the undersigned's ability to conduct a more granular analysis of what work was performed in this case. At best, Plaintiff simply states that counsel spent time "reviewing the relevant agreements and documents; investigating the Defendants' whereabouts, assets, and relevant history; drafting the complaint; discussions with the client regarding the action; service of the papers; and seeking a default judgment," although this account is hardly enlightening given its lack of detail. (Dkt. 13-2 at 3).

reduction to the hours claimed by each timekeeper is appropriate to ensure that this Court's award of attorneys' fees reflects only work which was reasonable and necessary.

Lastly, Plaintiffs fail to establish that their timekeepers' requested hourly rates are entirely reasonable or "'consistent with those generally charged for similar services' and with the prevailing market rates for this type of work in the [Eastern District of Virginia]." *Sines*, 2023 WL 2388050, at *16 (citing *Lambert*, 798 S.E.2d at 183; *Commn'w v. Orndoff*, 2020 WL 8839685, at *3 (Va. Cir. Jan. 3, 2020) ("This is an objective factor, which is determined by expert testimony or the experience of the trial judge."). Plaintiff requests that its three attorneys be compensated at rates ranging from $645 to $1250 per hour and its two paralegals be compensated at $275 or $325 per hour (Dkt. 13-2 at 2), providing through the declaration of counselor of record John Lomas Esq. that the standard rates of the Eversheds Sutherland professionals who worked on this matter are set based on "the prevailing market rates for similar services by lawyers of reasonable comparable skills and experience." (*Id*. at 1). Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff submitted a supplemental memorandum contending that its timekeepers' rates were reasonable when compared to the *Vienna Metro* and Fitzpatrick Matrix with additional allowances for rate increases over time. (Dkt. 20 at 2–4). But this all fails to constitute "specific evidence that the hourly rates sought coincided with the [] prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work. *Lee v. Agape Health Management, Inc.*, 2024 WL 3565409, at *4 (4th Cir. 2024) (quoting *Grissom v. The Mills Corp.*, 549 F. 3d 313, 321 (4th Cir. 2008)). Plaintiff, for example, did not provide "affidavits of other local lawyers who are familiar with both the skills of the fee applicants and more generally with the type of work in the relevant community"—even after the express invitation of the undersigned to do so. *Id*. (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.

3d 235, 245 (4th Cir. 2009)).   The Fitzpatrick Matrix, which reflects rates in the District of Columbia, is neither binding on nor wholly relevant to the Eastern District of Virginia. *Id.* (citing *Robinson*, 560 F. 3d at 245; *Grissom*, 549 F. 3d at 323).   Moreover, the *Vienna Metro* Matrix is merely a "useful starting point . . . not a required referent," *id.* at \*4 & n.5 (quoting *Newport News Shipbuilding and Dry Dock Co. v. Holiday*, 591 F. 3d 219, 228 (4th Cir. 2009)), which is of limited utility where Plaintiffs have failed to articulate why the timekeepers should be compensated at rates beyond the highest end of such matrices.[20]   Accordingly, the undersigned finds that Plaintiffs' timekeepers should be compensated at the following rates consistent with the high end of 2011 *Vienna Metro* matrix.

| TIMEKEEPER | POSITION | RATE |
|---|---|---|
| John T. Lomas | Partner | $770 |
| Will O'Brien | Partner | $820 |
| Zack Lindsey | Associate | $600 |
| Devorah Hirsch | Paralegal | $325.00 |
| Stephanie Keating | Paralegal | $275.00 |

Multiplying the above-adjusted rates by the above-adjusted hours yields the following attorneys' fee award, which the undersigned finds reasonable and necessary to this case and should not be further adjusted:

| TIMEKEEPER | POSITION | RATE | HOURS | TOTAL |
|---|---|---|---|---|
| John T. Lomas | Partner | $770 | 2.13 | $1,640.10 |
| Will O'Brien | Partner | $820 | 1.41 | $1,156.20 |

---

[20]     Plaintiff recognizes that the range of rates set forth in the *Vienna Metro* Matrix corresponds to a total fee ranging from $26,814.50 to $45,186.00, and that rates set forth in the 2023 Fitzpatrick Matrix corresponds to a total fee of $39,759,30. (Dkt. 20 at 3, 4). Plaintiff argues that "[g]iven the Vienna Metro matrix is more than thirteen years old, the high-end of the rates in the matrix should be the minimum considered reasonable now" such that the requested fee of $49,454 should be awarded. (*Id.*). However, this argument is in some tension with Plaintiff's reliance on the 2023 Fitzpatrick matrix rates, which are both recent and would result in a requested fee approximately $10,000 less than that Plaintiff requests, even though it is well-understood that hourly rates are generally higher in the District of Columbia than in the Eastern District of Virginia. More fundamentally, even accepting Plaintiff's argument, Plaintiff does not make any attempt to explain why its timekeepers can claim hourly rates at the high end for their experience categories as opposed to, i.e., the low-end or middle of the range, in addition to a rate increase accounting for elapsed time.

| Zack Lindsey | Associate | $600 | 14.31 | $8,586.00 |
|---|---|---|---|---|
| Devorah Hirsch | Paralegal | $325.00 | 0.12 | $39 |
| Stephanie Keating | Paralegal | $275.00 | 6.09 | $1,674.75 |
| **TOTAL** | | | | **$13,096.05** |

Plaintiff also requests an award of $5,422.33 in costs incurred litigating this case. (Dkt. 13-2 at 3). The costs are itemized and attributable to service, filing, and pro hac vice fees. (*Id*. at 4). The bulk of the fees ($4,547,38) relates to Plaintiffs' counsel's retention of StoneTurn Group LLP to locate and serve Muller "after traditional process servers were unable to serve him successfully." (*Id*. at 3). Upon review of the record, the undersigned finds that Plaintiffs' request for $5,422.33 is reasonable and necessary and should be granted pursuant to Count I.

Because only Muller is liable on Count I, the undersigned finds that the Court's entire award of fees and costs must be borne by Muller only.

## VII.    CONCLUSION

For the foregoing reasons, the undersigned United States Magistrate Judge recommends that Plaintiff FiveT Group's Motion for Default Judgment (Dkt. 13) be **GRANTED IN PART** and **DENIED IN PART** as to Defendants Marlon Muller and LionCap Global Management. Specifically, the undersigned recommends that the Court:

- **GRANT** the Motion for Default Judgment as to Muller on Count I (Breach of Contract – Promissory Note);

- **GRANT** the Motion for Default Judgment as to LionCap only on Count II (Breach of Contract – SPA);

- **AWARD** Plaintiff $696,402.53 in compensatory damages and $156,833.67 in prejudgment interest as to Count I, for which Muller alone is liable;

- **AWARD** Plaintiff $500,000 in compensatory damages and $108,986.30 in prejudgment interest as to Count II, for which LionCap alone is liable;

- **AWARD** Plaintiff $13,096.05 in attorneys' fees and $5,422.33 in costs pursuant to Count I, for which Muller alone is liable;

- **AWARD** Plaintiff post-judgment interest on this Court's entire award of damages, interest, and fees and costs, pursuant to 28 U.S.C. § 1961(a). Each Defendant is liable for only the post-judgment interest attributable to the portion of this Court's award of damages, prejudgment interest, and fees and costs for which they are severally liable, as stated above;

- **DENY** Plaintiff's Motion for Default Judgment (Dkt. 13) in all other respects; and

- **DISMISS** this civil action in all other respects.

## VIII.    NOTICE

Plaintiff is directed to serve by registered mail a copy of this Report and Recommendation on Defendants within seven (7) days of entry of this Report and Recommendation. Plaintiff is further directed to file a declaration certifying service of this Report and Recommendation on Defendants via the Court's electronic filing system within ten (10) days of entry of this Report and Recommendation. The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

*William E. Fitzpatrick*
WILLIAM E. FITZPATRICK
United States Magistrate Judge

June 17, 2025
Alexandria, Virginia